IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| STARNET INSURANCE COMPANY,<br><br>PLAINTIFF,<br><br>vs.<br><br>NEW-TECHNOLOGY PEST MANAGEMENT, INC., DANIEL'S LANDING HOMEOWNERS' ASSOCIATION, and HAYDEN JENNINGS and ALBERT BIONE, both individually and on behalf of all others similarly situated,<br><br>DEFENDANTS. | Civil Action No.: 2:19-cv-01803-DCN<br><br>**COMPLAINT**<br><br>(Declaratory Judgment)<br><br>(Non-Jury) |

Plaintiff StarNet Insurance Company ("StarNet"), by and through its undersigned counsel, complaining of the above-named defendants, New-Technology Pest Management, Inc. ("New-Tec") and Danial's Landing Homeowners' Association ("Association") and Hayden Jennings ("Jennings") and Albert Bione ("Bione"), both individually and on behalf of all others similarly situated (collectively "Underlying Plaintiffs"), respectively alleges and would show as follows:

**NATURE OF ACTION**

1.      This action is brought pursuant to the provisions of the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, there is a real and justiciable controversy between the parties, the parties are interested parties, and StarNet asks the Court to declare the rights and obligations of the parties.

2.      The Court's declaration will confer certainty on the parties and serve the interests of justice.

## PARTIES

3. StarNet is an insurance company organized and existing under the laws of the state of Pennsylvania, with its principal places of business in Urbandale, Iowa. StarNet issues insurance policies in South Carolina and insures interests located within South Carolina.

4. Upon information and belief, New-Tec is a corporation organized and existing under the laws of the state of South Carolina with its principal place of business in Summerville, South Carolina.

5. Upon information and belief, the Association is a non-profit eleemosynary corporation and horizontal property regime organized and existing under the laws of the state of South Carolina and doing business in Berkeley County, South Carolina.

6. Upon information and belief, Jennings is an individual and is a citizen of the state of South Carolina and resides in Berkeley County, South Carolina.

7. Upon information and belief, Bione is an individual and is a citizen of the state of South Carolina and resides in Berkeley County, South Carolina.

8. Jurisdiction exists because there is complete diversity of citizenship between StarNet and the Defendants, and the amount in controversy, including the potential costs of defending and indemnifying New-Tec in the underlying dispute, potentially exceeds $75,000.00. This Court thus has jurisdiction based upon 28 U.S.C. § 1332(a).

9. Venue is appropriate under 28 U.S.C. § 1391 because this lawsuit seeks a declaration from the Court interpreting the terms of insurance policies issued to New-Tec as an insured with regard to his business located in South Carolina and work performed in Berkeley County, South Carolina.

## FACTUAL BACKGROUND

**A.  Underlying Lawsuit**

10. This declaratory judgment action arises out of claims regarding New-Tec's alleged failure to properly treat for and discover termites.

11. On December 12, 2016, Underlying Plaintiffs filed a Complaint in the Court of Common Pleas for Berkeley County, South Carolina, Case No. 2016-CP-08-2951. Since that time, on November 15, 2018, Underlying Plaintiffs filed their Third Amended Complaint, captioned *Daniels Landing Homeowners' Association and Hayden Jennings and Albert Bione, both individually and on behalf of all others similarly situated v. Greystar Development and Construction, L.P., et al.* ("Daniels Landing Lawsuit"). A true and correct copy of the Third Amended Complaint is attached as **Exhibit A**, the allegations of which are incorporated here by reference.

12. According to the Third Amended Complaint, the Daniels Landing Lawsuit involves claims arising out of the alleged defective construction and termite treatment of a condominium project consisting of twelve (12) buildings containing two hundred ninety-five (295) residential condominium units and eight (8) commercial units ("Daniel's Landing" or "the Project") in Berkeley County, South Carolina.

13. According to the Third Amended Complaint, New Tec performed termite control treatment, issued termite bonds, and made periodic termite inspections at Daniel's Landing beginning in 2003 and continuing each year thereafter into 2016.

14. In the Third Amended Complaint, Underlying Plaintiffs contend that at the time the Certificates of Occupancy were issued, Daniel's Landing contained latent defects. Underlying Plaintiffs further assert that a professional engineer inspected the Project and allegedly discovered

3

numerous construction deficiencies, building code violations, deviations from manufacturer's specifications, and substantial resulting damage, including termites and resulting termite damage.

15. In the Third Amended Complaint, Underlying Plaintiffs include causes of action for negligence/recklessness/gross negligence; breach of warranties; and breach of contract as to New Tec.

16. Underlying Plaintiffs allege they are entitled to recover damages, including actual, direct, indirect, special, consequential, and punitive damages.

17. StarNet is currently defending New Tec under a full reservation of rights.

**B.     The Policies**

18. In 2004, StarNet first issued a commercial general liability policy, policy number PSP0002462-00, to New Tec for the policy period beginning September 25, 2004 to September 25, 2005. StarNet then issued policy numbers PSP0002462-01; PSP0002462-02; PSP0002462-03; PSP0002462-04; PSP0002462-05 to New Tec for the September 25, 2005 to September 25, 2006, September 25, 2006 to September 25, 2007, September 25, 2007 to September 25, 2008, September 24, 2008 to September 25, 2009, and September 25, 2009 to September 25, 2010 policy periods, respectively. True and correct copies of the policies are attached as **Exhibit B**, **Exhibit C**, **Exhibit D**, **Exhibit E**, **Exhibit F**, and **Exhibit G**, the terms and conditions of which are incorporated herein by reference.

19. The policies issued by StarNet are commercial general liability policies of insurance. The policies contain an endorsement entitled, "Endorsement – Inspection Services" ("Inspection Services Endorsement"), that modifies the coverage provided under the policies. Per the endorsement, coverage is afforded subject to a $1,000 per claim deductible and provides a limit of $1,000,000 per accident and $2,000,000 in the aggregate.

4

20.     A justiciable controversy exists between the parties in this action concerning whether coverage exists under the policies for the damages as alleged in the Daniels Landing Lawsuit.

21.     StarNet is entitled to a judicial declaration that the policies issued to New Tec do not provide coverage for the allegations raised in the Daniels Landing Lawsuit, and therefore, StarNet has no duty to defend or indemnify in connection with the Daniels Landing Lawsuit.

22.     Additionally, StarNet is entitled to a judicial declaration that it is entitled to recover the costs of the defense borne by StarNet through the date upon which StarNet obtains a judicial declaration that it owed no duty of defense regarding the claims made in the Daniels Landing Lawsuit.

**FOR A FIRST DECLARATION**
**(Inspection Services Endorsement)**

23.     The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

24.     The policies afford commercial general liability coverage under form CG 00 01 10 01.

25.     The policies, pursuant to their insuring agreement, provide coverage, subject to any applicable exclusion(s), for "bodily injury" or "property damage" that is caused by an "occurrence" and "occurs during the policy period."

26.     The policies, as set forth more specifically therein, define "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

27. The policies, as set forth more specifically therein, define "property damage" in relevant part to mean "physical injury to tangible property, including all resulting loss of use of that property…or loss of use of tangible property that is not physically injured."

28. The policies, as set forth more specifically therein, define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

29. In addition, the policies issued for the 2004 to 2008 policy periods include the Inspection Services Endorsement under form CG 75 04 01 04 and the policy issued for the 2008 to 2009 policy period includes the Inspection Services Endorsement under form CG 75 04 01 01, which provides:

> THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
>
> This endorsement modifies insurance provided under the following:
>
> > COMMERCIAL GENERAL LIABILITY
>
> Except as provided in this endorsement this insurance does not apply to any claim, "suit", or demand made against the insured arising out of the rendering or failure to render "Inspection Services" as defined herein.
>
> Subject to a **$1,000** per claim deductible and subject to a limit of **$1,000,000** per accident and **$2,000,000** in the aggregate, we will pay on behalf of the insured those sums that you become legally obligated to pay as damages as a result of "bodily injury" or "property damage" caused by your rendering or failure to render "Inspection Services".
>
> "Inspection Services" shall mean the detection, identification, and/or eradication of structural pests or wood destroying organisms, the preparation of approval of drawings, opinions, reports, surveys, designs, or any related specifications in the performance of pest control operations.  "Inspection Services" does not include any inspection whose purpose is other than the detection, identification, and/or eradication of structural pests or wood destroying organisms.
>
> The per occurrence and aggregate limits set forth above are the most we will pay for damages because of "bodily injury" or "property damage" under this

"Inspection Service" coverage. All such damages are also subject to the completed operations aggregate of the policy. Coverage under this "Inspection Services" coverage shall only extend to claims asserted within twenty-four (24) months from the date of the insured's last inspection, regarding any such claim.

It is agreed that costs of treatment, retreatment, inspection, or reinspection are specifically excluded and no coverage for any such damages is provided by this policy.

30. The policy issued for the 2009 to 2010 policy period includes the Inspection Services Endorsement under form CG 75 04 10 08, which provides:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY

Except as provided in this endorsement this insurance does not apply to any claim, "suit", or demand made against the insured arising out of the rendering or failure to render "Inspection Services" as defined herein.

Subject to a **$1,000** per claim deductible and subject to a limit of **$1,000,000** per accident and **$2,000,000** in the aggregate, we will pay on behalf of the insured those sums that you become legally obligated to pay as damages as a result of "bodily injury" or "property damage" caused by your rendering or failure to render "Inspection Services".

"Inspection Services" shall mean the detection, identification, and/or eradication of structural pests or wood destroying organisms, the preparation of approval of drawings, opinions, reports, surveys, designs, or any related specifications in the performance of pest control operations. "Inspection Services" does not include any inspection whose purpose is other than the detection, identification, and/or eradication of structural pests or wood destroying organisms.

The per occurrence and aggregate limits set forth above are the most we will pay for damages because of "bodily injury" or "property damage" under this "Inspection Service" coverage. All such damages are also subject to the completed operations aggregate of the policy. Coverage under this "Inspection Services" coverage shall only extend to claims asserted within thirty-six (36) months from the date of the insured's last inspection, regarding any such claim.

7

> It is agreed that costs of treatment, retreatment, inspection, or reinspection are specifically excluded and no coverage for any such damages is provided by this policy.

31. The initial complaint was filed by Underlying Plaintiffs in the Daniels Landing Lawsuit on December 12, 2016.

32. Per the Inspection Services Endorsement, the insurer will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages as a result of "bodily injury" and "property damage" caused by the insured's rendering or failure to render "inspection services" but only in accordance with the terms of the Inspection Services Endorsement.

33. Further, per the Inspection Services Endorsement, coverage is afforded only for claims that are asserted within twenty four (24), under forms CG 75 04 01 04 and CG 75 04 01 01, or thirty six (36) months, under form CG 75 04 10 08, from the insured's last inspection within the policy period.

34. In addition, per the terms of the commercial general liability policy, coverage is afforded only for "property damage" that occurs during the policy period.

35. Under the terms and conditions of the policies, StarNet contends and would show that some or all of the allegations raised in the Daniels Landing Lawsuit do not constitute "property damage" as defined in the policies.

36. Further, StarNet contends and would show that the claims at issue in the Daniels Landing Lawsuit were not made within twenty four (24) or thirty six (36) months of the insured's last inspection during the relevant policy's policy period.

37. In addition, StarNet contends and would show that the damages at issue in the Daniels Landing Lawsuit did not occur during the relevant policy's policy period.

38. Accordingly, StarNet seeks a declaration from this Court that it has no defense or indemnification obligations under the policies in connection with the claims alleged in the

Daniels Landing Lawsuit because the claims do not constitute "property damage" as defined by the policies.

39. In addition, StarNet seeks a declaration from this Court that it has no defense or indemnification obligations under the policies in connection with the claims alleged in the Daniels Landing Lawsuit because the claims at issue in the Daniels Landing Lawsuit were not made within twenty four (24) or thirty six (36) months of the insured's last inspection during the relevant policy's policy period.

40. Further, StarNet seeks a declaration from this Court that it has no defense or indemnification obligations under the policies in connection with the claims alleged in the Daniel's Landing Pointe Lawsuit because the claimed property damage did not occur during the policy periods.

**FOR A SECOND DECLARATION**
**(Coverage Only for Inspection Services)**

41. The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

42. Per the allegations of the Third Amended Complaint, Underlying Plaintiffs contend that New Tec performed termite control treatment, issued termite bonds, and made periodic termite inspections at Daniel's Landing.

43. The policies' Inspection Services Endorsement defines "inspection services" to mean "the detection, identification, and/or eradication of structural pests or wood destroying organisms, the preparation of approval of drawings, opinions, reports, surveys, designs, or any related specifications in the performance of pest control operations."

44. The work performed by New Tec at the Project meets the definition of "inspection services."

45. Accordingly, StarNet seeks a declaration from this Court that the coverage afforded under the policies, if any is afforded, is governed by the Inspection Services Endorsement.

## FOR A THIRD DECLARATION
### (Lack of "Bodily Injury" and "Property Damage")

46. The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

47. Per the Inspection Services Endorsement, the policies afford coverage only for "bodily injury" or "property damage."

48. Underlying Plaintiffs seek to recover damages for breach of contract and breach of warranties.

49. Damages for breach of contract and breach of warranties do not constitute either "bodily injury" or "property damage" as defined by the policies.

50. Accordingly, StarNet seeks a declaration from this Court that the policies do not afford coverage for any allegations of entitled to damages as the result of breach of contract and/or breach of warranties, in the Daniels Landing Lawsuit.

## FOR A FOURTH DECLARATION
### (Standard Policy Exclusions)

51. The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

52. Section I—Coverages, paragraph 2. Exclusions of Coverage A Bodily Injury and Property Damage Liability of both of the policies contains certain standard policy exclusions, namely, "b. Contractual Liability."

53. The policies provide, in relevant part, as follows:

> **2.** Exclusions
>
> This insurance does not apply to:

\*\*\*\*

**b.**     Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)**     That the insured would have in the absence of the contract or agreement; or

**(2)**     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)**     Liability to such party for, or for the costs of, that party's defense has also been assumed in the same "insured contract"; and

**(b)**     Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*\*\*\*

54.     The above-referenced policy exclusion provide that coverage is not available under the policies to the extent that the damages at issue in the Daniels Landing Lawsuit fall within any of this exclusion. Accordingly, the policies afford no coverage for the damages alleged in the Daniels Landing Lawsuit, and StarNet does not owe a duty to defend or indemnify.

11

**WHEREFORE,** StarNet prays that the Court enter an Order declaring the rights of the parties as follows:

a.  The policies issued by StarNet to New Tec do not provide coverage for and/or exclude from coverage the claims asserted in connection with the Daniels Landing Lawsuit;

b.  StarNet has no duty to defend or indemnify in connection with the claims asserted in the Daniels Landing Lawsuit; or in the alternative,

c.  The policies provide coverage for only some and/or exclude from coverage some of the claims asserted/damages alleged in the Daniels Landing Lawsuit;

d.  StarNet is entitled to recover the costs of the defense borne by StarNet through the date upon which StarNet obtains a judicial declaration that it owed no duty of defense regarding the claims made in the Daniels Landing Lawsuit; and

e.  Further, StarNet prays that the Court award the costs of the action and any such other and further relief as this Court shall deem just and proper.

GALLIVAN, WHITE & BOYD, P.A.

By: s/Shelley S. Montague
Shelley S. Montague (07587)
Janice Holmes (11366)
1201 Main Street, Suite 1200
Post Office Box 7368
Columbia, South Carolina 29202
Telephone: 803-779-1833
Facsimile: 803-779-1767
smontague@GWBlawfirm.com
jholmes@GWBlawfirm.com

*Attorneys for StarNet Insurance Company*

Columbia, South Carolina
June 25, 2019